OPINION OF THE COURT
Samuel Greenstein, J.
In this damage action arising out of alleged personal injuries sustained by Eddie Diaz, an infant, defendant New York City Housing Authority (the Housing Authority) moves pursuant to CPLR 3025 (b) for leave to amend its answer to assert the affirmative defense of General Obligations Law § 9-103, which immunizes property owners from ordinary negligence claims in certain instances; said movant also requests that the proposed amended answer be deemed served on March 17, 1993 and that, thereafter, pursuant to CPLR 3212, the Housing Authority be granted summary judgment dismissing the plaintiffs’ complaint against it on the basis of General Obligations Law § 9-103.
Before addressing the applicability of the statute (General Obligations Law § 9-103), the court will consider the Housing Authority’s motion to amend its answer by including the affirmative defense based on General Obligations Law § 9-103 and the plaintiffs’ cross motion for the imposition of costs and sanctions on the Housing Authority for its failure to timely move for leave to amend its answer.
General Obligations Law § 9-103 is not an affirmative defense which must be pleaded. If the statute is applicable, its sole effect is to establish the substantive law defining the extent of duty owed to the infant plaintiff (see, Ferres v City of New Rochelle, 68 NY2d 446, 450; also, CPLR 4511 [a]).
As the Court of Appeals stated in the Ferres case (supra, at 450), "[w]hile it would have been better practice to raise the legal issue earlier by way of motion, defendant’s failure to do so did not, contrary to plaintiff’s contention, result in a waiver.”
*74 Consequently, as an amendment is unnecessary, the motion of the Housing Authority to amend and the plaintiffs’ motion for the imposition of costs and sanctions on the Housing Authority are both denied.
Accordingly, the court will consider the applicability of General Obligations Law § 9-103 to the plaintiffs’ claim without requiring that the Housing Authority plead the statute as an affirmative defense in an amended answer.
The action to recover damages for alleged personal injuries to the infant plaintiff, Eddie Diaz, and the derivative claim of his mother Edia Diaz, arise out of an accident which occurred on June 29, 1989 at about 7:00 p.m. when the infant plaintiff rode his bicycle on top of a refrigerator door that was lying on an asphalt walkway or path on premises 997 DeKalb Avenue, Brooklyn, New York (the premises). The premises is a Housing Authority premises and is part of a housing complex known as the Roosevelt Houses. The undisputed facts reveal that the walkway where the accident occurred was a paved asphalt walkway which leads from the Stuyvesant Avenue public sidewalk to the building premises known as 997 DeKalb Avenue. Adjacent to the walkway on the premises were a paved asphalt basketball court and play area. The walkway was not fenced off from the Stuyvesant Avenue public sidewalk. The basketball court and play area were not fenced off from the walkway. At the time of the occurrence, the Housing Authority did not employ persons to limit entry to the premises to tenants of the premises. The Housing Authority did not charge an admission fee for nontenants of the premises entering upon the premises to utilize the walkway, basketball court or play area.
The infant plaintiff resided at 69 Stuyvesant Avenue, Brooklyn, New York, which is across the street from the place of the occurrence, but is not a part of the Housing Authority complex. He had frequently ridden his bicycle at the scene of the occurrence prior to the accident. Other children had also ridden their bicycles on the walkway prior to the infant plaintiff’s accident.
It is the Housing Authority’s contention that upon the papers presented, which includes the foregoing facts, it should he granted summary judgment dismissing the plaintiffs’ complaint because General Obligations Law § 9-103 immunizes it from plaintiffs’ negligence claims.
General Obligations Law § 9-103 exempts landowners who *75 permit their property to be used for certain specified recreational activities, including bicycle riding, from liability for injuries sustained on the property, unless, inter alia, there is a "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity” (General Obligations Law § 9-103 [2] [a]; see, Ferres v City of New Rochelle, 68 NY2d 446, 450-451, supra; Baisley v State of New York, 163 AD2d 502, 503 [2d Dept]). "[T]he sole purpose of the statute was 'to induce property owners, who might otherwise be reluctant to do so for fear of liability, to permit persons to come on their property to pursue specified activities’ ” (Iannotti v Consolidated Rail Corp., 74 NY2d 39, 43, quoting Ferres v City of New Rochelle, supra, at 451). The extensive protection from liability conferred by the statute (General Obligations Law § 9-103) is the quid pro quo which it offers to property owners to induce them to open their lands for recreational use (Iannotti v Consolidated Rail Corp., supra, at 43).
The test set out by the Court of Appeals to determine whether General Obligations Law § 9-103 applies to certain property is whether the property is a type which is "not only physically conducive to the particular activity or sport but * * * would [also] be appropriate for public use in pursuing the activity as recreation” (Iannotti v Consolidated Rail Corp., supra, at 45; see also, Jacobs v Northeastern Indus. Park, 181 AD2d 720, 721 [2d Dept]).
In the case at bar, the walkway was a limited area, provided as the means of access to and from the public sidewalk and the apartment building known as 997 DeKalb Avenue, Brooklyn, for its tenants and others. The question is whether— notwithstanding its active commercial use — the walkway is the sort of premises which the Legislature would have envisioned as being opened up to the public for recreational activities such as bicycle riding as a result of the inducement offered by the statute (see, Iannotti v Consolidated Rail Corp., supra, at 45). In the court’s opinion, it was not that sort of premises. Although the walkway may have been physically conducive to bicycle riding, it was not appropriate for such activity by the general public. Bicycle riding on the walkway by the general public would be disruptive and could threaten with injury persons such as tenants who were using the walkway to go to and from the public sidewalk and the apartment building (see, Baisley v State of New York, 163 AD2d 502, 504 [2d Dept], supra).
*76 Accordingly, it is the decision of this court that General Obligations Law § 9-103 is inapplicable under the facts of this case, and the Housing Authority’s motion for summary judgment on such grounds, dismissing the plaintiffs’ complaint against it pursuant to CPLR 3212, is denied.
The motion of defendant, the City of New York, pursuant to CPLR 3212, granting it summary judgment dismissing the plaintiffs’ complaint against it, and all cross claims against it, is granted. It is undisputed that the New York City Housing Authority operated, managed and controlled the Roosevelt Houses including the walkway where the infant plaintiff alleges that he was injured. No evidence has been presented showing that the City of New York had any responsibility with respect to the maintenance of the subject walkway.
The Housing Authority opposes the City of New York’s motion for summary judgment on the ground that "it appears the City Sanitation was negligent on the Thursday before the incident, in its duties of picking up refrigerators (a bulk item) which may have been discarded by a tenant at the place of the incident.”
Even assuming that it can be proven that the Department of Sanitation failed to pick up discarded refrigerators as argued by the Housing Authority, such failure does not create liability on the City of New York in the absence of a special relationship between the City of New York and Eddie Diaz, the infant plaintiff. "In order to establish a prima facie case of negligence, a party must demonstrate, inter alia, the breach of a duty owed to him by the alleged tort-feasor (cf., Solomon v City of New York, 66 NY2d 1026). It is well settled that public entities are 'immune from negligence claims arising out of the performance of their governmental functions, including police protection, unless the injured person establishes a special relationship with the entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty (see De Long v County of Erie, 60 NY2d 296, 304; Florence v Goldberg, 44 NY2d 189, 195; Riss v City of New York, 22 NY2d 579, 583; Motyka v City of Amsterdam, 15 NY2d 134, 139; Bass v City of New York, 38 AD2d 407, 413, affd * * * 32 NY2d 894)’ (Miller v State of New York, 62 NY2d 506, 510)” (Cossano v State of New York, 129 AD2d 671-672 [2d Dept]).