[58 NYS3d 823]

Charles B. Cummings, Appellant, v Robert W. Manville, Respondent.

Fourth Department, July 7, 2017

## APPEARANCES OF COUNSEL

*William Mattar, P.C.*, Williamsville (*Matthew J. Kaiser* of counsel), for appellant.

*Trevett Cristo P.C.*, Rochester (*Melanie S. Wolk* of counsel), for respondent.

## OPINION OF THE COURT

CURRAN, J.

On April 4, 2010, plaintiff visited his friend Anthony Cringoli at his home on Walker Lake Ontario Road in Hamlin, New York. On that day, plaintiff brought to Cringoli's home, for the first time, his four-wheel all-terrain vehicle (ATV). Cringoli's home is accessed only by a private gravel road owned by defendant. At the time of the accident, plaintiff had intended to ride his ATV into Cringoli's backyard. Plaintiff, however, could not access the backyard directly from Cringoli's property. Instead, plaintiff traveled down defendant's gravel road with the intention to go around a hedgerow and onto a neighboring parcel of land, and then cut back into Cringoli's backyard. While traveling on the road on his ATV, plaintiff struck a pothole, which caused his wheel to jerk sideways, throwing him from the ATV.

Plaintiff commenced this negligence action against defendant seeking damages for the injuries he sustained in the accident. Following joinder of issue and discovery, defendant moved pursuant to CPLR 3212 for summary judgment dismissing the complaint on the ground that he was immune from liability pursuant to General Obligations Law § 9-103. Supreme Court granted the motion, and we conclude that the order should be reversed.

General Obligations Law § 9-103, commonly referred to as the recreational use statute, grants owners, lessees, or occupants of premises immunity from liability based on ordinary negligence if a member of the public enters their property to engage in specified activities, including motorized vehicle operation for recreational purposes (*see Bragg v Genesee County Agric. Socy.*, 84 NY2d 544, 546-547 [1994]). Subject to certain exceptions not relevant to this appeal (*see* § 9-103 [2]), the statute provides that

> "an owner, lessee or occupant of premises, whether or not posted as provided in section 11-2111 of the environmental conservation law, owes no duty to keep the premises safe for entry or use by others for . . . motorized vehicle operation for recreational purposes . . . , or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes" (§ 9-103 [1] [a]).

The purpose of the statute was articulated by the Court of Appeals as follows: "The premise underlying section 9-103 is simple enough: outdoor recreation is good; New Yorkers need suitable places to engage in outdoor recreation [and] more places will be made available if property owners do not have to worry about liability when recreationists come onto their land" (*Bragg*, 84 NY2d at 550).

Defendant, as the party seeking summary judgment, has the burden of establishing as a matter of law that he is immune from liability pursuant to the statute (*see generally Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]). Thus, defendant is required to establish that he owned, leased or occupied the property, that plaintiff was engaged in a specified recreational activity, and that the property was suitable for recreational use (*see generally Bragg*, 84 NY2d at 548). Here, the parties do not dispute that plaintiff was engaged in a recreational activity, ATV riding, which falls within the scope of the statute (*see Bryant v Smith*, 278 AD2d 576, 576 [2000]). It is also undisputed that defendant owned the road where the accident occurred. Thus, the central issue in this case is whether defendant established that the road is suitable for the recreational use of ATV riding (*see Albright v Metz*, 88 NY2d 656, 662 [1996]).

In analyzing whether land is suitable for a specific recreational use, courts look to whether the portion of the land on

which the plaintiff was injured was suitable for that particular activity. For instance, in *Pulis v T.H. Kinsella, Inc.* (156 Misc 2d 499 [1993], *affd for reasons stated* 204 AD2d 976 [1994]), the plaintiff operated an ATV in a gravel pit owned by the defendant and, upon leaving the gravel pit, was injured when the ATV ran into a cable that stretched across the entrance roadway (*Pulis,* 156 Misc 2d at 501). Most of the property owned by the defendant was undeveloped and suitable for ATV use, but the plaintiff never operated his ATV in those areas (*id.* at 502). Supreme Court differentiated between the suitable and unsuitable portions of the property for ATV use, determining that the legislature could not have intended for General Obligations Law § 9-103 to apply to a gravel pit that was not suitable for ATVs (*id.* at 503-504). This Court agreed with Supreme Court's determination that the property owner was ineligible for the statutory immunity provided by section 9-103, and permitted the plaintiff's negligence action to proceed (*Pulis,* 204 AD2d at 976).

The Court of Appeals used the same analysis in *Albright* but ended in a different result under a different factual scenario therein. In that case, the plaintiff's son rode a motorized dirt bike on property, a portion of which was used by the defendant owner as a landfill (*Albright,* 88 NY2d at 660-661). The plaintiff's son drove up a path alongside the landfill to the top of a berm, and then plunged 35 feet into the bed of the landfill (*id.* at 660). The plaintiff contended that the landfill area of the property was not suited for dirt bikes, and that General Obligations Law § 9-103 therefore did not immunize the defendant owner from liability (*id.* at 661). The defendant owner contended, however, that the statutory immunity did apply because the dirt path on which the plaintiff's son was riding was suitable for such a recreational use. The Court of Appeals agreed with the defendant owner, and explained that,

> "[t]o the extent plaintiff argues that the land's suitability must be judged by its 'general characteristics' and that the general characteristic of the property at issue is landfill, plaintiff ignores the fact that portions of [the] land were not used as landfill and it was in these other areas that plaintiff's son injured himself while motorbiking" (*id.* at 663-664).

In other words, while the general use of the property was as a landfill, a portion of that property (i.e., the dirt path) was suitable for motorbiking, particularly because it had been used for

such purposes by various persons for many years (*id.* at 664-665). The Court therefore held that the defendant owner was entitled to the statutory immunity (*id.* at 665).

We recognize that the Second Department in *Morales v Coram Materials Corp.* (51 AD3d 86 [2008]) determined that "the focus of *Pulis* on the use of a particular area of property where an accident occurred . . . has been implicitly rejected by the Court of Appeals' more recent focus in *Albright* on the general character of a landowner's property" (*id.* at 94). However, we disagree with that interpretation of *Albright*. The Court in *Albright* looked to the particular area in which the plaintiff was injured and, although that area was different from the general character of the property surrounding it, found it suitable for the recreational activity of the plaintiff's son. While *Albright* looked to the "general suitability" of the particular area where the plaintiff's son was injured, it did so only when considering the plaintiff's contention that there was a recent change in the property (*Albright*, 88 NY2d at 664). Specifically, the plaintiff contended that the portion of the property on which her son was riding had been altered during the 24-hour period prior to the accident to create a cliff where none had existed before, and thus that the suitability of the property for the recreational activity had changed (*id.* at 664). The Court rejected that contention, noting that the suitability must be "judged by viewing the property as it generally exists, not portions of it at some given time" (*id.*, citing *Bragg*, 84 NY2d at 552). Thus, in *Albright* the Court was distinguishing between the general conditions of a parcel of land and a temporary condition on that land (i.e., a temporal distinction) and, contrary to the view of the Court in *Morales* and the trial court in this case, the Court was not making a distinction between the general character of the whole property and the character of a certain portion of the property (i.e., a spatial distinction). In this case, we conclude that, by viewing defendant's property and surrounding area as a whole, rather than focusing on the general suitability of the road where the accident occurred, the trial court erred in its legal analysis when making its suitability determination.

Additionally, in looking at the suitability of a particular property, courts look to whether the premises are the "type of property which is not only physically conducive to the particular activity or sport but is also a type which would be appropriate for public use in pursuing the activity as recreation" (*Iannotti v*

*Consolidated Rail Corp.*, 74 NY2d 39, 45 [1989]). "A substantial indicator that property is 'physically conducive to the particular activity' is whether recreationists have used the property for that activity in the past; such past use by participants in the sport manifests the fact that the property is physically conducive to it" (*Albright*, 88 NY2d at 662; *see Bragg*, 84 NY2d at 552; *Iannotti*, 74 NY2d at 46-47).

The road where the accident occurred is the sole means of access to Walker Lake Ontario Road for three homes. Defendant maintains the road by scraping and re-leveling it almost every year. It is wide enough to accommodate one car traveling in each direction. While located in a rural area, the two-lane private road is used for residential purposes, including at times for school bus access. Thus, the physical characteristics of the road are residential, as opposed to recreational in nature (*cf. Obenauer v Broome County Beaver Lake Cottagers Assn.*, 170 AD2d 739, 740 [1991] [road described as "a narrow, secluded dirt path" was suitable for ATV use and thus the defendant was entitled to immunity]).

While defendant averred in an affidavit that persons on ATVs and snowmobiles have used the road to access surrounding areas that were conducive to ATV riding, we conclude that this was insufficient to establish the road was suitable for ATV riding. Even assuming, arguendo, that defendant's affidavit established that the road was suitable for ATV riding as a matter of law, we conclude that plaintiff raised a triable issue of fact by submitting affidavits from himself and Cringoli. Cringoli averred that he has resided at the property for approximately 14 years and, as a result, has personal knowledge of the surrounding properties and roadways. He routinely sees residents, and their visitors, using the road to get to their homes. He has never seen anyone, with the exception of defendant, use an ATV, snowmobile or any recreational vehicle on the road. Rather, Cringoli states that the road serves a residential area. Plaintiff also submitted an affidavit in which he stated that he is familiar with the property and that the road upon which he was injured served "residents and visitors of numerous residents." Plaintiff testified at his deposition that he visited Cringoli almost every weekend, and in his affidavit he averred that, during those visits, he "witnessed many automobiles traveling on the residential road, which is wide enough to accommodate one car traveling in each direction." He further averred that there was "significant traffic in the

general vicinity of the residential road, which is connected to Walker Lake Ontario Road. The Lake Ontario State Parkway, which is directly accessible from Walker Lake Ontario Road, is a busy highway with dense traffic."

Finally, the portion of property where plaintiff fell is not the type of property that the legislature intended to cover under General Obligations Law § 9-103 (*see Sasso v WCA Hosp.*, 130 AD3d 1546, 1548 [2015]). As the Court of Appeals explained, courts should ask whether the property

> "is the sort which the Legislature would have envisioned as being opened up to the public for recreational activities as a result of the inducement offered in the statute. In other words, is it a type of property which is not only physically conducive to the particular activity or sport but is also a type which would be appropriate for public use in pursuing the activity as recreation?" (*Iannotti*, 74 NY2d at 45.)

Application of the statutory immunity to the road at issue would lead to its application to potentially any road in a rural area, which is inconsistent with the idea that this statute is in derogation of the common law and should therefore be narrowly construed (*see Seideman v County of Monroe*, 185 AD2d 640, 640 [1992]).

Accordingly, we conclude that defendant failed to meet his burden of establishing that he is entitled as a matter of law to immunity under General Obligations Law § 9-103, and thus the court erred in granting defendant's motion for summary judgment dismissing the complaint.

PERADOTTO, J. (dissenting). We respectfully dissent inasmuch as we conclude that defendant, the property owner, is entitled to immunity from liability under the recreational use statute (*see* General Obligations Law § 9-103). In particular, we disagree with the majority's conclusion that the property at issue is not suitable for the recreational activity in which plaintiff was engaged at the time of his accident, i.e., operation of an all-terrain vehicle (ATV). We would therefore affirm the order granting defendant's motion for summary judgment dismissing the complaint.

"Whether a parcel of land is suitable and the immunity available is a question of statutory interpretation, and is, therefore, a question of law for the [c]ourt" (*Bragg v Genesee County Ag-*

*ric. Socy.*, 84 NY2d 544, 552 [1994]). "Suitability is established by showing that the subject property is (1) physically conducive to the activity at issue, and (2) of a type that is appropriate for public use in pursuing that activity as recreation" (*Sasso v WCA Hosp.*, 130 AD3d 1546, 1547 [2015] [internal quotation marks omitted]). "A substantial indicator that property is 'physically conducive to the particular activity' is whether recreationists have used the property for that activity in the past; such past use by participants in the sport manifests the fact that the property is physically conducive to it" (*Albright v Metz*, 88 NY2d 656, 662 [1996]).

Here, the evidence establishes that the private access road where the accident occurred is physically conducive to the operation of an ATV. There are three residences located along the road, behind which there is a pond and wooded area, and the occupants of those residences use the road as a means of ingress and egress to and from a public roadway to which the road is connected. The road consists of "[c]rusher run gravel," which defendant maintains by leveling the surface and redistributing gravel scrapings into any holes that may have formed. Defendant averred that numerous individuals on ATVs, snowmobiles and dirt bikes had used the road for recreation in the past and, in particular, that such individuals had used the road to either access the pond and wooded area or cross over the public roadway to the rural area on the other side.

Plaintiff and the homeowner along the road whom plaintiff was visiting on the day of the accident did not dispute that there was past recreational use of the road by ATV riders. Plaintiff, who did not reside in the area, merely averred that, "[d]uring the multiple times" that he visited the homeowner, he saw recreationists operating ATVs in an adjacent field that is separated from defendant's property by a hedgerow. Plaintiff's averment does not conflict with defendant's observations and, in fact, corroborates defendant's account to the extent that plaintiff confirms that individuals frequently operated ATVs in an area adjacent to the road. Indeed, plaintiff's deposition testimony establishes that he too intended to drive the ATV down the road, around the hedgerow, and through the adjacent field to gain access to the homeowner's backyard that was otherwise fenced. The homeowner likewise averred that recreationists routinely rode ATVs in the adjacent field, and he further confirmed that the road had previously been used for operating recreational vehicles inasmuch as he had observed

defendant doing so. Contrary to the majority's assertion, the fact that plaintiff and the homeowner indicated that the road is used to access three residences does nothing to undermine the conclusion that the gravel road is also physically conducive to the operation of ATVs. We thus conclude that, along with the physical characteristics of the road, the evidence of past recreational use of the road for ATV riding to access areas adjacent to the property " 'clearly evinces that the property is physically conducive to that activity' " (*Moscato v Frontier Distrib.*, 254 AD2d 802, 803 [1998], *lv denied* 92 NY2d 817 [1998], quoting *Albright*, 88 NY2d at 662; *see Coogan v D'Angelo*, 66 AD3d 1465, 1465-1466 [2009] [the record on appeal establishes that the "path" deemed suitable for use by recreational motor vehicles was made of gravel over a hard fill base and was the sole means of ingress and egress to and from the property]).

We further disagree with the majority's conclusion that the road is not appropriate for public use for the recreational operation of ATVs to access adjacent areas. The purpose of the statute is to promote the recreational use of private land, and it has thus been construed "liberally to apply it to public and private land . . . , [and] to rural or urban property whether developed or undeveloped" (*Bragg*, 84 NY2d at 548). Here, the presence of three residences along the private gravel access road that is adjacent to a pond and wooded area and other undeveloped areas does not preclude its suitability for recreational use (*see Rivera v Glen Oaks Vil. Owners, Inc.*, 41 AD3d 817, 820 [2007], *lv denied* 9 NY3d 817 [2008]; *Wiggs v Panzer*, 187 AD2d 504, 505 [1992]), and the primary use of the road to access those residences does not, ipso facto, render it inappropriate to operate ATVs thereon as a means of moving to the adjacent areas (*see Obenauer v Broome County Beaver Lake Cottagers Assn.*, 170 AD2d 739, 740-741 [1991]). Considering the nature of the private gravel road and the evidence that the road provides access to other areas where ATVs may also be used for recreation, the submissions establish that, despite the three residences along the road, "the property is the sort which the Legislature would have envisioned as being opened up to the public for recreational activities" (*Iannotti v Consolidated Rail Corp.*, 74 NY2d 39, 45 [1989]; *see Moscato*, 254 AD2d at 803). Finally, the majority's concern that application of the recreational use statute here will authorize its application to "potentially any road in a rural area" is unfounded given that, as here, suitability is determined based upon the particular property at issue.

DeJOSEPH and NeMOYER, JJ., concur with CURRAN, J.; SMITH, J.P., and PERADOTTO, J., dissent and vote to affirm in a separate opinion by PERADOTTO, J.

It is hereby ordered that the order so appealed from is reversed on the law without costs, the motion is denied, and the complaint is reinstated.